UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

KEVIN ESQUE,                          )
                                      )
                    Plaintiff,        )
                                      )
          v.                          )        No. 1:23-cv-01791-JRS-CSW
                                      )
DWD COMPANY, LLC,                     )
DANIEL BALLARD,                       )
WHITNEY RAWLINGS,                     )
DANAE SPANGLER,                       )
                                      )
                    Defendants.       )

**Order on Motions to Dismiss and for Conditional Certification**

## I.    Introduction

This is a trucking wage-and-hour case.  Esque, a driver, alleges that he was not
paid for ancillary work—like pre-trip truck inspections, fueling, and staging trips—
he did while driving for DWD Company, a construction hauling business.  He sues
DWD and its owners, Ballard, Rawlings, and Spangler, alleging violations of the
federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 et seq., and Indiana's
Wage Payment Statute, Ind. Code § 22-2-5-1.  (The FLSA requires employees be paid
for work above 40 hours a week at certain overtime rates; the Wage Payment Statute
requires that employees timely be paid what they are due.)  Because Esque alleges
DWD treated its other drivers similarly, he seeks to bring his FLSA claim as a
"collective action," 29 U.S.C. § 216(b), and his state wage claim as a class action, Fed.
R. Civ. P.  23(a).

Now before the Court are four motions.  DWD's first Motion to Dismiss, (ECF No. 31), argues that Esque's state law claims are preempted by the Labor Management Relations Act ("LMRA"), which federalizes employer-union relations, because Esque's pay was set by a union collective bargaining agreement.  DWD's second Motion to Dismiss, (ECF No. 52), argues that the individual defendants cannot be liable because they are not "employers" within the meaning of the statutes.  Esque, for his part, moves for "conditional certification" of an FLSA "collective."  (ECF No. 56.)  Finally, DWD moves to strike the affidavits Esque attached to his reply in support of the certification motion.  (ECF No. 72.)  All four motions are **denied**.

## II.    Legal Standard

"A Rule 12(b)(6) motion tests 'the legal sufficiency of a complaint,' as measured against the standards of Rule 8(a)."  *Gunn v. Cont'l Cas. Co.*, 968 F.3d 802, 806 (7th Cir. 2020) (quoting *Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 526 (7th Cir. 2015)).  Rule 8(a) requires that the complaint contain a short and plain statement showing that the pleader is entitled to relief.  Fed. R. Civ. P. 8(a)(2).  "To meet this standard, a plaintiff is not required to include 'detailed factual allegations,'" but the factual allegations must "state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible if it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

Because the defendant must ultimately be *liable*, "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law." *Neitzke v. Williams*, 490 U.S. 319, 326–27 (1989). That applies "without regard to whether [the claim] is based on an outlandish legal theory or on a close but ultimately unavailing one." *Id.* But "[a] complaint need not identify legal theories, and specifying an incorrect legal theory is not a fatal error." *Rabe v. United Air Lines, Inc.*, 636 F.3d 866, 872 (7th Cir. 2011).

When considering a motion to dismiss for failure to state a claim, courts "take all the factual allegations in the complaint as true," *Iqbal*, 556 U.S. at 678, and draw all reasonable inferences in the plaintiff's favor, *Roberts v. City of Chicago*, 817 F.3d 561, 564 (7th Cir. 2016). Courts need not, however, accept the truth of legal conclusions, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

## III. Discussion

### A. LMRA Preemption

Esque was a union driver. His pay rates, along with many other conditions of his employment, were set by collective bargaining agreement. (ECF Nos. 18-1, 18-2.) Thus, DWD argues, for this Court to decide whether Esque was timely paid the "amount due" him under the Wage Payment statute, Ind. Code § 22-2-5-1, the Court will need to interpret the collective bargaining agreement. And because interpreting collective bargaining agreements is the exclusive province of the LMRA, *Atchley v.*

*Heritage Cable Vision Assocs.*, 101 F.3d 495, 500 (7th Cir. 1996), the Wage Payment claim is preempted.

DWD gets the rule right, but it might mischaracterize the case—which, to be fair, changed under its feet with the filing of the Second Amended Complaint, (ECF No. 46), that dropped previous references to "violations of the collective bargaining agreement."

Esque's claim is that he was not paid for some of the work he did. (*Id.* at 3.) If that is true, then he might not have been paid all the overtime to which he is entitled under the FLSA—and, because the FLSA entitlement trumps private agreements to the contrary, *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 740–41 (1981), that would mean he was not paid the full amount "due" him as wages, in violation of the Indiana statute, regardless of what the collective bargaining agreement says. The Court would look to the collective bargaining agreement only to figure out the hourly rate of pay, and that mere reference to the agreement does not implicate the LMRA. *Livadas v. Bradshaw*, 512 U.S. 107, 124 (1994); *In re Bentz Metal Prod. Co., Inc.*, 253 F.3d 283, 289 (7th Cir. 2001).

The analysis changes if it turns out that Esque did not work overtime. Say, for instance, that DWD credited him one week with 30 hours of work, and that, under the FLSA definition of work, he actually worked 32 hours. There is no entitlement to FLSA overtime in that scenario, so the "amount due" under the Indiana law is simply what the parties agreed to—and the parties could, by contract, agree to define "work" hours any way they please. *See Heder v. City of Two Rivers, Wisconsin*, 295 F.3d 777,

783 (7th Cir. 2002); *accord St. Vincent Hosp. & Health Care Ctr., Inc. v. Steele*, 766 N.E.2d 699, 704 n.4 (Ind. 2002) ("[A]s long as an employer is in compliance with the applicable minimum wage laws, an employee's wage is a mutual decision not governed by statute."). Esque, asserting that he must be "paid all of [his] compensable time as defined by federal law," (Pl.'s Resp. 5, ECF No. 5), misapprehends the law. The FLSA does not require, independently of its overtime and minimum-wage provisions, that "compensable time" be paid; it defines "compensable time" only to decide when the overtime and minimum-wage provisions are violated. 29 C.F.R. § 785.1. In other words, the FLSA definition of "work" is not incorporated into private contracts by default. If, as on the example given, FLSA overtime is not triggered, Esque would have to show that the contract entitled him to be paid for 32 hours, and that would require interpreting the contract to show which hours count as work. Interpreting the contract puts the claim back in LMRA territory, and the state law would be preempted. *Atchley*, 101 F.3d at 502.

"Preemption," of course, just means that federal law displaces state law as a basis for decision. *Id.* at 498. It does not mean that the claim itself is extinguished, *id.* at 501, nor that the complaint, misidentifying the ultimate rule of decision, is necessarily deficient, *Albiero v. City of Kankakee*, 122 F.3d 417, 419 (7th Cir. 1997).

DWD argues that Esque fails to "properly plead" an LMRA claim under § 301, (Br. Supp. 12, ECF No. 32), because, for instance, he does not allege he exhausted union grievance procedures and does not allege that the union failed properly to represent him. That puts the cart before the horse. Even if § 301 is the right legal theory—

and, remember, it only comes into play where the FLSA entitlement does not—all a claim requires is some (plausible) allegations that together suggest possible relief. *Rowlands v. United Parcel Serv. - Fort Wayne*, 901 F.3d 792, 800 (7th Cir. 2018); *see also Bartholet v. Reishauer A.G. (Zurich)*, 953 F.2d 1073, 1077–78 (7th Cir. 1992) (explaining federal pleading standards and holding that the failure to mention federal law after state law theory preempted is not grounds to dismiss complaint).  The claim "DWD did not pay me for my work" is, for a union driver, a plausible allegation of "[a] violation of contract[] between an employer and a labor organization representing employees," 29 U.S.C. § 185, so it suffices.

DWD's arguments are affirmative defenses, which, of course, initial pleadings need not rebut.  *Hyson USA, Inc. v. Hyson 2U, Ltd.*, 821 F.3d 935, 939 (7th Cir. 2016). That would be obvious in an ordinary contract case.  The waters are muddied in § 301 cases because of the "exhaustion" requirement, which is sometimes incautiously applied as a pleading rule.  (*See* Br. Supp. 12, ECF No. 32 (citing district court cases).) But "exhaustion" in § 301 cases is a merits rule.  All it says is this: *if* a collective bargaining agreement includes exclusive grievance-resolution procedures, then an employer can successfully defend by showing those procedures were not followed.  *See Republic Steel Corp. v. Maddox*, 379 U.S. 650, 652 (1965) ("As a general rule . . . individual employees wishing to assert contract grievances must attempt use of the contract grievance procedure agreed upon by employer and union as the mode of redress."); *Vaca v. Sipes*, 386 U.S. 171, 184 (1967) ("Since the employee's claim is based upon breach of the collective bargaining agreement, he is bound by terms of

that agreement which govern the manner in which contractual rights may be enforced."). That is an ordinary application of contract principles. It works on the merits. Exhaustion cannot be a pleading rule because, until the Court interprets the collective bargaining agreement, it does not know whether contractual grievance procedures exist or apply. Courts talk about § 301 exhaustion as a "general" requirement, *Atchley*, 101 F.3d at 501, and what happens "[o]rdinarily," *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 163 (1983), to account for both the usual case—where the collective bargaining agreement contains an exclusive grievance procedure and that procedure applies—and for the exceptions—where the agreement does not include such terms or does not apply. ("[H]ybrid § 301/fair representation" suits, *Reed v. United Transp. Union*, 488 U.S. 319, 329 (1989), are a way to get around an otherwise applicable, binding, and exclusive grievance procedure; they are not called for if that procedure does not govern, *DelCostello*, 462 U.S. at 164.)

In sum, then, there is nothing the Court need dismiss. Esque's claim of underpayment for hours worked might carry on under the Indiana wage law, enforcing the FLSA overtime requirement, or, preempted, it might be a breach of the collective bargaining agreement under § 301. Neither theory is, at the pleading stage, doomed, *Neitzke*, 490 U.S. at 326–27 (1989), and that is good enough. The first Motion to Dismiss, (ECF No. 31), is **denied.**

### B. Employers

The FLSA governs "employer[s]," 29 U.S.C. § 206(a), and the Indiana Wage Payment Statute governs "[e]very person, firm, corporation, limited liability

company, or association" with employees, Ind. Code § 22-2-5-1.  When Esque initially named DWD as the sole defendant, (ECF No. 1), that was unobjectionable—DWD is no doubt his past "employer" and it is a "firm" or "limited liability company."   In Esque's Second Amended Complaint, (ECF No. 46), though, he added DWD's owners, Ballard, Rawlings, and Spangler, as individual defendants.  They move to dismiss, (ECF No. 52), arguing that they are not "employer[s]" under the FLSA or the Indiana statute, and so cannot be held liable.

Esque does not, of course, need to prove at the outset that the individual defendants *are* liable; he only needs to allege some facts showing they could be. *Rowlands*, 901 F.3d at 800.  He does that.

The FLSA says "'[e]mployer' includes any person acting directly or indirectly in the interest of an employer in relation to an employee."  29 U.S.C. § 203(d).  That definition is broad.  Its outer bounds in this Circuit are, apparently, undefined, *see Solis v. Int'l Detective & Protective Serv., Ltd.*, 819 F. Supp. 2d 740, 748 (N.D. Ill. 2011) (discussing out-of-Circuit authority and consensus practice among district courts of this Circuit), but it can certainly include fellow employees working as supervisors, *Riordan v. Kempiners*, 831 F.2d 690, 694 (7th Cir. 1987), *Luder v. Endicott*, 253 F.3d 1020, 1022 (7th Cir. 2001), as well as other companies that have some managerial role, *Falk v. Brennan*, 414 U.S. 190, 195 (1973).  Courts agree that individual defendants with control over FLSA violations are properly held responsible for them.  *Solis*, 819 F. Supp. 2d at 748 (quoting *Donovan v. Agnew*, 712 F.2d 1509, 1511 (1st Cir. 1983)) ("The overwhelming weight of authority is that a

corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages."). This Court, too, has used "control" as a touchstone, without holding that it marks the full extent of "employer" liability. *See Duvall v. Heart of CarDon, LLC*, 611 F. Supp. 3d 607, 632 (S.D. Ind. 2020) (discussing, and applying, the widespread "degree of control" test).

The Court does not need to pin down the outer bounds of FLSA liability now, because Esque's allegations put the individual defendants well within the statutory scope. Esque alleges that Ballard, Rawlings, and Spangler are the three owners of DWD; that they run the company; and that they are in part responsible for deciding his pay. (Second Am. Compl. 5–6, ECF No. 46.) Those are plausible allegations; if they prove true then the three were "acting . . . in the interest of an employer in relation to" Esque. 29 U.S.C. § 203(d); *accord Luder*, 253 F.3d at 1022 (those who use their authority over employees "to violate their rights under the FLSA [are] liable for the violation."). To be clear, the Court does not hold that the individual defendants *are* employers under the FLSA—it may turn out they do not run the company, set Esque's pay, or otherwise act "directly or indirectly" as his employer—only that the pleadings clear the minimal bar of Rule 12(b)(6).

Esque's allegations also suffice under the Indiana statute (which the Court interprets as it thinks Indiana courts would do, *Treat v. Tom Kelley Buick Pontiac GMC, Inc.*, 646 F.3d 487, 490 (7th Cir. 2011)). That statute does not use the word "employer"; instead, it lists those potentially liable: "[e]very person, firm, corporation,

limited liability company, or association, their trustees, lessees, or receivers appointed by any court, doing business in Indiana." Ind. Code § 22-2-5-1. This Court is not the first to observe that oddity of statutory language, *see Duvall*, 611 F. Supp. 3d at 629 (citing *Poff v. Quick Pick, LLC*, No. 2:15-cv-405, 2018 WL 6061569, at *3 (S.D. Ind. Nov. 20, 2018)), but it is, apparently, easy to forget, *see Black v. Emp. Sols., Inc.*, 725 N.E.2d 138, 141 (Ind. Ct. App. 2000) (first noting that "the Wage Payment Statute does not define 'employer'" and then attempting to "interpret the statutory term 'employer'"). The individual defendants are certainly "person[s] . . . doing business in Indiana," Ind. Code § 22-2-5-1, so the statute by its plain terms covers them.

Even if Indiana courts are inclined to limit the statute's scope, they seem to look to the "general ability to control the hired party," *Mortg. Consultants, Inc. v. Mahaney*, 655 N.E.2d 493, 497 (Ind. 1995), or, what is much the same, to the "control[] or . . . right to control" the other party, *Black*, 725 N.E.2d at 143. *Accord Wharton v. Furrer*, 620 F. App'x 546, 549 (7th Cir. 2015) ("Th[e] ruling [in *Meyers v. Meyers*, 861 N.E.2d 704 (Ind. 2007)] suggests that the Indiana Supreme Court does not think it unfathomable that an employee plaintiff could recover from both a company and the individuals who control a closely-held company under the [Indiana Minimum Wage Law]."). Here too, then, Esque's allegations plausibly suggest liability: the three owners of a privately held company quite plausibly exercise or could exercise control over the company's employees. (*See* Second Am. Compl. 5–6, ECF No. 46.) That is

enough to put Ballard, Rawlings, and Spangler within the potential zone of liability; again, whether they turn out actually to be liable awaits the proof of fact.

Because the allegations of the Second Amended Complaint plausibly suggest the individual defendants are within the scope of the FLSA and Indiana law, the second Motion to Dismiss, (ECF No. 52), is **denied.**

### C.  Conditional Certification

Esque seeks to represent other DWD drivers as representative of an FLSA "collective action," 29 U.S.C. § 216(b), and a state-law class action, Fed. R. Civ. P. 23(a).  (Second Am. Compl., ECF No. 46.)

Class actions proceed according to the "detailed procedural provisions found in Rule 23."  *Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 772 (7th Cir. 2013) ("*Espenscheid II*").  Collective actions, by contrast, have no procedures dictated by statute.  *Id.*  Nonetheless, "case law has largely merged" the two devices, in the Seventh Circuit at least, *id.*, so "[c]ollective actions are certified and decertified just like class actions, unaffected by the absence of a governing rule of procedure," *Espenscheid v. DirectSat USA, LLC*, 688 F.3d 872, 877 (7th Cir. 2012) ("*Espenscheid II*").  *See also Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 452 (2016) (assuming, without deciding, that the standard for certifying an FLSA collective "is no more stringent than the standard for certifying a class").

A collective action, unlike a class action, is opt-in, *Espenscheid I*, 688 F.3d at 877, so before it can be certified it must be assembled.  Many courts use a two-step certification process: first, on the strength of a "modest factual showing" that other

employees might be similarly situated, the court "conditionally certifies" a collective and authorizes notice to its potential members; then, after discovery, the court decides on final certification, a "more stringent" process much like Rule 23 class certification. *In re New Albertsons, Inc.*, No. 21-2577, 2021 WL 4028428, at *1 (7th Cir. Sept. 1, 2021).

Esque moves for "conditional certification" of a collective of current and former DWD truck drivers. (ECF No. 56.)   DWD, for its part, opposes "conditional certification," arguing that Esque has not borne his burden to show that the other drivers were "victims of a common policy or plan."  (Defs.' Resp. 12, ECF No. 64.) (When Esque, in reply, tried to supplement his account with extra affidavits, DWD moved to strike them.  (ECF No. 72.))

Both assume the Court will use the two-step process here.   But the two-step process is not required, either by statute or by Circuit precedent. *Bigger v. Facebook, Inc.*, 947 F.3d 1043, 1049 n.5 (7th Cir. 2020); *but see Hollins v. Regency Corp.*, 867 F.3d 830, 833 (7th Cir. 2017).  Rather, this Court is entrusted with "wide discretion to manage collective actions."  *New Albertsons*, 2021 WL 4028428, at *2 (quoting *Alvarez v. City of Chicago*, 605 F.3d 445, 449 (7th Cir. 2010)).

It seems to the Court that "conditional certification" is the wrong way to start.   It is, before anything else, a misnomer.  "[C]onditional certification does not produce a class with an independent legal status, or join additional parties to the action." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 75 (2013). Instead, "[t]he sole consequence of conditional certification is the sending of court-approved written

notice to employees." *Id.*; *New Albertsons*, 2021 WL 4028428, at *2 ("[C]onditional certification and authorization of notice to others who may be similarly situated is a preliminary, non-final step that does not adjudicate any party's rights."). Calling court-approved notice a first "certification" is needlessly confusing.

The underlying question is simply whether court-approved notice is appropriate. In this case, Esque has not proposed any such notice; really what he seeks on "conditional certification" is an order directing DWD to produce the contact information of potential collective members. (Pl.'s Br. Supp. 7–8, ECF No. 57.) And that, in turn, is a discovery question. The Federal Rules allow discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). If Esque plausibly alleges that he and his "similarly situated" coworkers were underpaid in violation of the FLSA, then it seems the coworkers' contact information is very likely to be both relevant and proportional to the case. *See Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989) ("The District Court was correct to permit discovery of the names and addresses of the discharged employees.").

Any discovery dispute that might arise from that observation is, however predictable, not ripe, and the Court will not rule on it today. The Court **denies** the Motion for Conditional Certification, (ECF No. 56), because it is not using the two-step approach. (Esque will need to move for class certification under Rule 23(c), Fed. R. Civ. P. 23(c)(1); Certification of the proposed collective can be evaluated under the same standard at the same time. *Espenscheid II*, 688 F.3d at 877.) The Court also

**denies as moot** DWD's Motion to Strike, (ECF No. 72), because the Court is not evaluating evidence on "conditional certification." (Esque is, in any case, allowed to "supplement the complaint with factual narration in an affidavit or brief." *Albiero*, 122 F.3d at 419; *Schmees v. HC1.COM, Inc.*, 77 F.4th 483, 488 (7th Cir. 2023).)

Two final observations. First, it does not take much to plausibly allege an FLSA violation to oneself and "similarly situated" fellow employees—just a story that hangs together. That is basic federal pleading. *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 12 (2014). When other courts ask for a "modest factual showing," pre-discovery, on "conditional certification," they might really be asking whether the pleading standard was met. *See, e.g.*, *Ivery v. RMH Franchise Corp.*, 280 F. Supp. 3d 1121, 1132 (N.D. Ill. 2017). Discarding the "conditional certification" to focus on pleading gives an easy answer to "how stringently, and how soon, district courts should enforce § 216(b)'s 'similarly situated' mandate." *Swales v. KLLM Transp. Servs., L.L.C.*, 985 F.3d 430, 443 (5th Cir. 2021). Collective actions should be treated just like any other: with plausible allegations at pleading and proof of fact to come later. *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 514 (2002).

Second, while this Court may manage notice to potential collective members, the power to do so is predicated on the need for an orderly opt-in process. *Hoffmann*, 493 U.S. at 170–72. "May" is not "must." While seeking court-approved notice seems to have become habitual, *Swales*, 985 F.3d at 443 (observing "inertia" and "path-dependence" of the two-step approach), it might not be required, *Hoffmann*, 493 U.S. at 171 n.2 (citing *Shapero v. Kentucky Bar Ass'n*, 486 U.S. 466 (1988)) (implicitly

14

acknowledging the possibility of "communications with potential plaintiffs by counsel" separately from the "court-authorized notice").

## IV.   Conclusion

Pleading is just "the starting point" of a system that "focus[es] litigation on the merits of a claim." *Swierkiewicz*, 534 U.S. at 514.  Esque's is adequate, so both DWD's Motion to Dismiss, (ECF No. 31), and the individual defendants' Motion to Dismiss, (ECF No. 52), are **denied.**

The Court is not "conditionally certifying" any collective, so Esque's Motion for such certification, (ECF No. 56), is **denied**, and DWD's Motion to Strike affidavits introduced in briefing it, (ECF No. 72), is also **denied.**

Esque can seek discovery of potential collective members; if a dispute arises, it will be ruled on in due course.  If Esque wants the Court to approve a notice to potential collective members, he may so move, and the Court will rule on that, too, in due course.  Such a motion should include a proposed list of recipients and a proposed notice, which should be drafted "scrupulous[ly] to respect judicial neutrality." *Hoffmann*, 493 U.S. at 174.  Esque should also plan to move for certification—the only, and therefore the "final" certification—of his proposed collective and class.  (The Court will not certify any class or collective *sua sponte*.)  DWD's affirmative defenses, though premature here, may be reevaluated on that certification motion, on summary judgment, or, of course, at trial.

**SO ORDERED.**

Date: 07/29/2024

JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

15

Distribution:

Angela S. Cash
SCOPELITIS GARVIN LIGHT HANSON & FEARY PC
acash@scopelitis.com

Alvin Jackson Finklea, III
SCOPELITIS GARVIN LIGHT & HANSON
jfinklea@scopelitis.com

Adam Christopher Steel
Scopelitis, Garvin, Light, Hanson & Feary
asteel@scopelitis.com

Ronald E. Weldy
WELDY LAW
rweldy@weldylegal.com